UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANK CHARNECO

      Petitioner,

v.                                   CASE NO. 8:11-cv-1697-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Frank Charneco petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for aggravated battery. Charneco alleges one ground of trial court error and seven grounds of ineffective assistance of trial counsel. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 8)

## FACTS[1]

The victim was stabbed during a bar fight and transported to the hospital. While the victim was at the hospital, a nurse overheard the victim describe the man who stabbed him. Believing that she knew the perpetrator, the nurse showed the victim a photograph that included Charneco. The victim identified Charneco as the

---

[1] This factual summary derives from Charneco's brief on direct appeal and testimony adduced at trial. (Respondent's Exhibits 4 and 5)

person who stabbed him.  Both the victim and his brother, who was with the victim at the bar during the fight, identified Charneco in a police photographic lineup.  An information charged Charneco with aggravated battery.  A jury convicted Charneco and he serves fifteen years' imprisonment.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a

writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Charneco's conviction and sentence. (Respondent's Exhibit 6) In another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Charneco's Rule 3.850 motion to vacate. (Respondent's Exhibit 20) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief,

- 4 -

it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the

state court.

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 131 S. Ct. at 1398.  Charneco bears the burden of overcoming by clear and

convincing evidence a state court factual determination.  "[A] determination of a

factual issue made by a State court shall be presumed to be correct.  The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v.*

*Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Charneco's post-conviction claims warrants deference in this case.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Charneco claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Charneco must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Charneco must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Charneco cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 122–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Charneco must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

**Grounds Two and Three**

In ground two, Charneco contends that his trial counsel rendered ineffective assistance by not moving to dismiss the information because the information was based on neither an affidavit nor sworn testimony from a material witness.  In ground three, Charneco argues that this defect deprived the trial court of subject matter jurisdiction over his case. The state post-conviction court denied these grounds in Charneco's Rule 3.850 motion:

> Defendant's first claim is that counsel was ineffective for failing to file a motion to dismiss the charge against him on the ground that the information was not based on the testimony of a material witness. Here he claims that the state attorney did not have a sworn affidavit or testimony under oath from the material witnesses as sworn to. In his second claim he asserts counsel was ineffective for not filing a Motion to Dismiss based on the trial court's lack of subject matter jurisdiction. He alleges there was no subject matter jurisdiction because the information was invalid in the absence of the sworn testimony. These claims are without merit.
>
> In *Logan v. State,* 1 So. 3d 1253 (Fla. 4th DCA 2009), the Defendant, who pled no contest to a charge of Aggravated Battery, filed a motion for post-conviction relief regarding this exact same claim. The Court denied the claim, not only because the Defendant pled to the merits as discussed in Rule 3.140(g); but also because of Rule 3.140(o). Rule 3.140(o) provides:
>
>> **(o) Defects and Variances**. No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or

> acquittal to substantial danger of a new prosecution
> for the same offense.

> Relying on Rule 3.140, the court in *Logan* found that "the
> prosecutor's alleged failure to have received sworn testimony
> from witnesses before filing the information in this case is
> wholly speculative and cannot be raised once a defendant has
> entered a plea to the merits of the charge." The Court went
> further and found "[s]uch a claim is not grounds for
> post-conviction relief." *Id.* at 1255. It should be noted too that,
> even if counsel filed a Motion to Dismiss and the court found
> reason to grant it in this case, or if denied preserved it for
> appeal, it would not have prohibited further proceedings against
> him in connection with the charges since the state could have
> proceeded upon a properly filed information. *Alba v. State,* 541
> So. 2d 747 (Fla. 3d DCA 1989). Accordingly, the Defendant
> has failed to show prejudice.

(Respondent's Exhibit 15, pp. 2–3) (emphasis in original)

A circuit court in Florida has subject matter jurisdiction over a felony case. *Carbajal v. State*, 75 So. 2d 258, 262 (Fla. 2011).  Rule 3.140(g), Florida Rules of Criminal Procedure, requires that the state attorney or a designated assistant state attorney sign a felony information under oath affirming good faith in instituting the prosecution and certifying the receipt of testimony under oath from the material witness or witnesses to the offense.  The information in Charneco's case charges aggravated battery, a second-degree felony under Section 784.045(1)(a)(2), Florida Statutes.  The information includes the signature and oath of an assistant state attorney required under Rule 3.140(g).  (Respondent's Exhibit 1)  Charneco shows no defect in the information that deprived the trial court of jurisdiction.  Consequently, counsel had no basis to object to the information.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (stating that trial counsel has no duty to raise a frivolous claim).

Charneco fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying either ground two or ground three.   28 U.S.C. § 2254(d)(1), (2).

**Ground Seven**

Charneco claims that the information omitted the specific intent element in the aggravated battery charge.[2]  Charneco contends that his trial counsel rendered ineffective assistance by not moving to dismiss the information on that basis. However, in his reply Charneco admits that "this claim fails as argued . . . but would rely on this Honorable Court's understanding that a fundamental miscarriage of justice will result if this claim is not judged on its merits."  (Doc. 11, pp. 19–20)

A merits review affords Charneco no relief.  The state post-conviction court denied this ground in Charneco's Rule 3.850 motion:

> Defendant argues that counsel was ineffective for failing to file a motion to dismiss the charge of aggravated battery and for failing to preserve the issue for appeal. In support of his argument, Defendant claims that the information "tracked" the language of Florida Statute 784.083(l)(a), a simple battery. He claims the State omitted the specific intent to commit the crime of aggravated battery and only tried to amend the information

---

[2] Section 784.045, Florida Statutes, defines aggravated battery:

(1)(a) A person commits aggravated battery who, in committing battery:

> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
>
> 2. Uses a deadly weapon.

The information charged that Charneco "did intentionally or knowingly touch or strike [the victim] with a deadly weapon, to-wit:  a knife, against the will of [the victim]; contrary to Chapter 784.045(1)(a)(2), Florida Statutes . . . ." (Respondent's Exhibit 1)

minutes before jury selection. He claims that due to trial counsel's "deficient performance" the Court erred by convicting and sentencing him to a second-degree felony not charged on the instrument. This claim must fail. The original information charged Defendant with Aggravated Battery in the second degree. The information read, in part, that Defendant ". . . did intentionally or knowingly touch or strike [the victim] with a deadly weapon, to wit: a knife . . . contrary to Chapter 784.045(l)(a)(2), Florida Statutes." The information therefore, charged Defendant pursuant to the aggravated battery statute, but only with regard to subsection 2, involving a deadly weapon. The record reveals that the State did attempt to amend the information to include subsection 1, great bodily harm, just prior to jury selection. This was brought out by defense counsel, and after argument, the State ultimately withdrew the amended information. The case proceeded and Defendant was convicted on the charges brought in original information. Accordingly, this claim is completely without merit.

(Respondent's Exhibit 15, p. 7) (court's record citation omitted)

Charneco establishes no defect in the information. Consequently, he establishes no meritorious basis on which counsel could have moved to dismiss the aggravated battery charge. Charneco satisfies neither *Strickland's* deficient performance requirement nor *Strickland*'s prejudice requirement, both of which are necessary to support a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691-92. The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this ground. 28 U.S.C. § 2254(d)(1), (2).

**Ground Four**

Charneco contends that his trial counsel rendered ineffective assistance by "allowing [the admission] of an out-of-court statement and photo[graph] which derived from non-testifying witnesses." (Doc. 1, p. 10) Charneco claims that Arlene Henstrand, whom he believes was a nurse at the hospital where the victim was treated, showed the victim a photograph of Charneco and suggested that he was the perpetrator. Charneco alleges that after viewing the photograph from Henstrand the victim identified him as the perpetrator in an out-of-court police photographic line-up. He argues that a thorough investigation by trial counsel would have resulted in the suppression of the out-of-court identification.[3] Charneco also argues that trial counsel rendered ineffective assistance by "fail[ing] to bring [Henstrand] forward for confrontation" at trial. (Doc. 11, p. 15)

---

[3] Charneco moved before trial to suppress the allegedly improper identification by the victim. To support his motion Charneco argued (Respondent's Exhibit 2, p. 2):

> 6. According to [the victim] the unnamed nurse then told [the victim] that the description of the assailant sounded "like the dude that I used to date." Then she proceeded to produce a photograph in which the Defendant was prominently displayed.

> 7. The unnamed nurse told [the victim]'s father . . . that this man, the Defendant, has been in a lot of trouble, that the police have been after him a long time, and he had recently gotten out of jail. This was likely relayed to the victim.

> 8. After having seen the picture of the Defendant as the likely suspect by the nurse, [the victim] was shown a photo lineup by police wherein he identified the Defendant as the individual who stabbed him.

The state post-conviction court denied these claims[4] in Charneco's Rule 3.850 motion:

> In claim three Defendant . . . claims that counsel should have determined how a woman, he alleges is Arlene Henstrand, was able to produce his picture and show it to the victim in the hospital room. He claims that the Court was led to believe that this "unnamed" person was a nurse in the hospital; however, he alleges it was Henstrand and that she was not a nurse. He claims that had counsel investigated this issue the subsequent photo identification in the photo-pack would have been inadmissible. This claim is without merit. Counsel filed a Motion to Suppress the photo identification based on the actions of an "unnamed nurse" specifically alleging that the nurse produced a photograph in which the Defendant was prominently displayed. The motion alleged, and it was argued, that the unnamed nurse told the victim's father that the man, (Defendant), has been in a lot of trouble, that police have been after him a long time, and that he had recently been released from jail. Defense counsel argued that it was only after having seen the picture of the Defendant as the likely suspect by the nurse, that the victim was shown a photo lineup by police wherein he identified the Defendant as the individual who stabbed him. After hearing and argument, the Court denied the motion, specifically finding that there was no Fourth Amendment violation because . . . there was no government action. Accordingly, since defense counsel raised and argued this very issue; and since the issue of whether or not Henstrand worked in the hospital would not have affected that outcome (because it would not have established government action) this claim is denied.
>
> In claim four Defendant asserts that counsel was ineffective for failing to subpoena Arlene Henstrand to testify. In support of his argument, Defendant asserts that counsel should have investigated Henstrand to question her on how she came about being at the hospital and how she just happened to have a picture of the Defendant. He alleges that he was severely prejudiced and if counsel would have called her as a witness it would have changed the outcome of the case. However, other

---

[4] Charneco states (Doc. 1, p. 10) that ground four of the federal petition is a combination of claims three and four in his Rule 3.850 motion.

than this conclusory allegation, Defendant fails to set forth the substance of this witness's testimony that would have changed the outcome of his case. It seems that he is arguing that the witness had a "motive" for showing the victim his photograph in the hospital room. However, as discussed in claim three, counsel litigated the issue of the "unnamed nurse's" contact with the victim (whether it be Henstrand as argued by Defendant or some other nurse) in the motion to suppress which was ultimately denied. Thus, even if the witness was called to the stand and admitted that she had some sort of motive for showing the photograph to the victim in the hospital, it would not have affected the admissibility of the photo identification since it still would not have established government action. Accordingly, since the Defendant has failed to show it would have changed the outcome of his case, this claim is denied.[1]

> [1] It should be noted that according to the file, counsel did attempt to serve "Ms. Arleen Henstrand" but that service was returned after a number of attempts.

(Respondent's Exhibit 15, pp. 3–4) (court's record citation omitted)

Charneco presents no evidence demonstrating that trial counsel did not investigate Henstrand or the circumstances of her showing the victim Charneco's photograph. Charneco likewise presents no evidence substantiating his allegations that trial counsel failed to properly prepare for the suppression hearing and failed to secure Henstrand as a witness. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). The record evinces trial counsel's effort to both challenge the out-of-court identification and to secure Henstrand as a witness. Charneco fails to meet either

*Strickland*'s deficient performance requirement or *Strickland*'s prejudice requirement to support his claim of ineffective assistance of trial counsel.  *Strickland*, 466 U.S. at 691-92.  The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting the allegations in ground four.[5] 28 U.S.C. § 2254(d)(1), (2).

**Ground Six**

Charneco contends that his trial counsel rendered ineffective assistance by not impeaching the prosecution's witnesses and by not highlighting for the jury the differences between the witnesses' deposition testimony and their trial testimony.[6] Charneco alleges that although "counsel did attempt to show some of these inconsistencies through cross-examination, . . . counsel failed to show the jury that the state's case was, in fact, a witch hunt that was led by the elusive, non-testifying, wanting to remain anonymous woman, which then turned into the unnamed nurse, giving her free time to take care of [the] victim and, by her own efforts, a witness that

---

[5] Charneco in his reply (Doc. 11, pp. 10–11) argues that for trial counsel "to allow out-of-court testimony, suggestive identification, persuasion of guilt, and basic conviction to happen by someone who is never subjected to adverse confrontation goes against the Fourth and Sixth Amendments of the United States Constitution." He further alleges that, because the identification was unnecessarily suggestive, the trial court's denial of the suppression motion violated his federal right to due process. To the extent Charneco presents for the first time in his reply a federal Confrontation Clause claim or a federal due process claim as an independent basis for relief, he cannot obtain federal review. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'")).

[6] Charneco fails to articulate in the federal petition what "differences" in testimony he believes trial counsel should have challenged. He appears to support his federal claim by relying on the allegedly inconsistent statements he specified in his Rule 3.850 motion. (Respondent's Exhibit 11, pp. 9–11)

was not even at the crime scene, whose absence from deposition and trial is the main

point of this ineffective [assistance] claim." (Doc. 11, p. 10)

  The state post-conviction court denied this ground in Charneco's Rule 3.850

motion:

> Defendant asserts that trial counsel was ineffective for failing to
> impeach the State's witnesses and for failing to bring forth the
> inconsistent testimony between the material witnesses and
> between law enforcement officials. With regard to law
> enforcement, Defendant fails to state any inconsistencies
> between depositions and testimony at trial that could have been
> used to impeach the law enforcement witnesses. Moreover,
> with regard to both the victim and the victim's brother, any
> inconsistencies Defendant does point to were either, as
> acknowledged by the Defendant, admitted by the witnesses at
> trial thereby leaving no reason for impeachment; or as the
> record establishes, were ultimately addressed by counsel on
> cross-examination. For instance, Defendant complains about
> the inconsistencies between the victim's . . . testimony at the
> deposition and the victim's testimony at trial. Specifically,
> regarding the victim's identification of the Defendant and
> regarding whether or not the victim had been drinking on the
> date of the incident. However, counsel addressed these issues
> on cross-examination. Defendant also argues that counsel did
> not bring out the inconsistencies between the other witnesses at
> trial. For instance, he claims that counsel should have pointed
> out that there were differences in their testimony regarding
> what time they had arrived at the bar, how much they had to
> drink, and identification of the assailant. However, these
> witnesses testified in front of the jury. Therefore, any
> discrepancies between their testimony w[ere] placed before the
> jury. Moreover, counsel argued those inconsistencies in his
> closing argument. Accordingly, since Defendant has failed to
> establish how counsel's performance was deficient, these claims
> must fail.

(Respondent's Exhibit 15, pp. 6–7) (court's record citations omitted)

The record shows that trial counsel cross-examined the victim about the discrepancy between his deposition testimony and his trial testimony on (1) the number of drinks he consumed on the day of the crime and (2) his description of the assailant. (Respondent's Exhibit 4, Vol. III, pp. 132–44)  Counsel also thoroughly cross-examined the other prosecution witnesses and challenged portions of their trial testimony as contradictory to either their earlier deposition testimony or to the trial testimony of other witnesses. (Respondent's Exhibit 4, Vol. III, pp. 164–68, 174–82, 186–87, 198–204, 210–16)  Counsel in his closing argument implored the jury to acquit Charneco based on both the contradictions in the witnesses' testimony and the lack of physical evidence.  (Respondent's Exhibit 4, Vol. IV, pp. 354–73)  Even assuming that counsel performed deficiently, Charneco is not entitled to relief because he fails to show a reasonable probability exists that further impeachment of a state witness would have resulted in his acquittal.  The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this ground.  28 U.S.C. § 2254(d)(1), (2).

**Ground Five**

Charneco alleges that his trial counsel rendered ineffective assistance by not objecting when the prosecutor twice improperly shifted the burden of proof to the defense.  First, Charneco claims that, because the photographic identification "was instigated by a picture from a 'non-witness,'. . . [t]he burden was placed on the defense to prove the identification was, in fact, tainted." (Doc. 11, p. 17)  Second,

- 18 -

Charneco alleges that the prosecutor shifted the burden of proof when he stated in his

rebuttal closing argument (Respondent's Exhibit 4, Vol. IV, pp. 373, 380, 387):

> I guess what it comes down to, members of the jury, is that you
> are now looking at the most unluckiest man that has ever
> existed in the entire world. I mean, that is what the defense is
> asking you to believe after all, right?
>
> . . . .
>
> I mean, that's what they wanted you to believe; right? There's
> some guy, some poor unlucky soul that for no reason in this
> whole world, that we're going to say he committed an
> aggravated battery on me.
>
> . . . .
>
> What's more reasonable, members of the jury, that everything
> that points to him is because it is him or that he's just actually
> the unluckiest person in the whole world?

Charneco alleges that his trial counsel rendered ineffective assistance by not objecting

to these statements.

Charneco argued in his Rule 3.850 motion that the improper burden shift

resulted from counsel's failure to challenge the physical evidence, not from the

photographic identification or the closing argument as alleged in the federal petition.

Although a petitioner need not present in his federal habeas petition "a verbatim

restatement of the claims brought in state court," he may not present a particular

factual instance of ineffective assistance of counsel in his federal petition that he did

not first present to the state court.  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir.

2005); *Johnson v. Singletary*, 162 F.3d 630, 634–5 (11th Cir. 1998).  If a petitioner

raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts in his federal petition, he has failed to fairly present the federal claim to the state court. *See Weeks v. Jones*, 26 F.3d 1030, 1044–46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance of counsel in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). Charneco's failure to present to the state court the allegations raised in ground five of the federal petition renders the ground unexhausted.

Before a federal court can grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged

violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair*, 416 F.3d at 1302–03.

In his Rule 3.850 motion Charneco failed to alert the state post-conviction court of the factual allegations underlying the ineffective assistance of counsel claim that he presents in his federal petition.  *See Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.").  Charneco deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.  Consequently, the exhaustion requirement

remains unsatisfied, *Henry*, 513 U.S. at 365, rendering ground five procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. March 30, 2015Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a

petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir.

2001).  To meet this standard, a petitioner must show a reasonable likelihood of

acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

Charneco fails to demonstrate cause and prejudice excusing the default of his

federal claim.  *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495–96.  He neither

alleges nor shows that the fundamental miscarriage of justice exception applies.

*Henderson*, 353 F.3d at 892.  Because Charneco fails to proffer specific facts showing

an exception to procedural default, ground five is procedurally barred from federal

review.[7]

_____

[7] Alternatively, to the extent that Charneco attempts to argue in the federal petition the same
allegations of ineffective assistance of counsel that he presented to the state court in claim six of his
Rule 3.850 motion, he cannot obtain relief.  The state post-conviction court rejected the claim in
Charneco's Rule 3.850 motion:

> Defendant alleges that trial counsel was ineffective for allowing the burden
> of proof to shift to the Defendant. He claims that he was "tried and
> convicted" without any physical evidence or forensic evidence, and that his
> attorneys failed to properly challenge the State. He also asserts that the
> photographs of the blood droplets found outside the crime scene were
> mishandled by the police and were vital to the trial but were not presented
> during the trial. This claim is refuted by the record. As for the pictures of the
> blood droplets, they were admitted at trial. As for his claim that his attorney
> failed to properly challenge the State, and that he was convicted without any
> physical or forensic evidence, this claim is also refuted by the record. The
> fact that there was no physical or forensic evidence to establish his guilt is of
> no consequence. There were two eyewitnesses as well as the victim in this
> case who positively identified the Defendant as the perpetrator. As for
> challenging the evidence brought forth by the State, counsel thoroughly
> cross-examined each of the eyewitnesses with regard to identification. He
> also cross-examined every other witness produced by the State. Moreover,
> counsel called four witnesses on behalf of the Defendant. The record also
> reveals that after the State rested, counsel made a very detailed Motion for
> Judgment of Acquittal wherein he focused on all of the deficienc[ies] in the
> State's case. However, that motion was denied by the Court as was counsel's
> Motion for a New Trial. Thus, since the record clearly establishes that
> photographs of the blood droplets were admitted into evidence, and
> establishes that counsel did challenge the State's evidence, Defendant has
> failed to show how counsel was ineffective. Thus, this claim is denied.

(continued...)

**Ground One**

After sentencing, Charneco filed a state post-conviction Rule 3.853 motion for examination of DNA evidence seeking testing of blood droplets collected at the crime scene. Charneco asserts that the DNA test "could and would have shown other people [were] involved [in the fight] and the chances were highly probable to produce the actual perpetrator" of the crime. (Doc. 11, p. 4) The state post-conviction court denied the motion:

> Defendant was convicted of aggravated battery and sentenced to 15 years in prison. Defendant filed the instant motion asserting his innocence, alleging it is a case of mistaken identity and requesting testing of blood droplets collected at the crime scene. He alleges that the blood droplets were collected by law enforcement but not tested and that the droplets "may lead" to the "possible" discovery of the true assailant and proof of Defendant's innocence.
>
> The absence of Defendant's DNA in the blood droplets would not have exonerated him of the crime for which he was convicted. The victim in this case was stabbed in the doorway of a bar. Blood droplets were found in and around the area of the crime. There was no question at trial of the identity of the perpetrator. The victim, along with two other eyewitnesses, positively identified Defendant as the perpetrator. Defendant claims that the blood droplets at the location would have proven that he was not involved in the altercation and that it was, in fact, someone else. However, as testified to by the lead detective, Lisa Schoneman, there was no evidence that anyone

---

[7](...continued)
(Respondent's Exhibit 15, pp. 5–6) (court's record citations omitted)

The record supports the state court's rejection of this ground. Charneco establishes neither the deficient performance requirement nor the prejudice requirement necessary to support this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. Charneco fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim. 28 U.S.C. § 2254(d)(1), (2).

other than the victim was bleeding. She explained that if she
had tested the blood all it would have told her was that it was
the blood of the victim. Thus, there were no allegations that the
blood belonged to anyone other than the victim. Moreover,
there were never any allegations or any evidence that the
perpetrator, whoever it was, was bleeding. Since there is no
allegation that the perpetrator was in fact stabbed by anyone or
otherwise bleeding, the Defendant fails to establish how this
evidence would exonerate him or mitigate his sentence.

Therefore, . . . the Defendant's Motion for Post Conviction
DNA Testing is hereby DENIED.

(Respondent's Exhibit 16) (court's record citation omitted)  Charneco alleges that the

state post-conviction court's rejection of the Rule 3.853 motion violates his federal

right to due process.[8]

   To the extent that ground one presents a federal substantive due process

claim,[9] Charneco cannot obtain relief because he possesses no post-conviction

substantive due process right to obtain evidence for DNA testing.  *District Attorney's*

*Office for the Third Judicial Circuit v. Osborne*, 557 U.S. 52, 72–73 (2009).  *See also*

*Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1299 (2011) ("*Osborne* has rejected

substantive due process as a basis for [DNA testing] claims."); *Alvarez v. Att'y Gen. for*

*Fla.*, 679 F.3d 1257, 1261 (11th Cir. 2012) (citing *Osborne* and *Skinner*).  To the extent

that Charneco asserts a federal procedural due process violation resulting from the

state court proceedings on his Rule 3.853 post-conviction motion, he likewise cannot

---

[8] The state appellate court affirmed the denial of Charneco's Rule 3.853 motion in a *per curiam*
decision without a written opinion.

[9] In the federal petition Charneco presents a generalized due process claim without specifying whether
the claim is one of substantive due process or procedural due process.

obtain relief.  Post-conviction proceedings are "civil in nature and are not part of the criminal proceeding itself." *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987).  A prisoner's challenge to the process afforded him in a state post-conviction proceeding constitutes no cognizable claim for habeas corpus relief.  *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).  "The reasoning behind this well-established principle is straightforward:  a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — i.e., the conviction itself — and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365 (citations omitted).

The due process violation Charneco alleges in ground one occurred during a state post-conviction proceeding, not during the criminal trial that resulted in his conviction.  A procedural due process claim allegedly occurring in the state post-conviction proceeding is not a basis for federal habeas relief because the claim asserts no constitutional challenge to Charneco's confinement.  Consequently, Charneco cannot obtain relief on ground one.

**Ground Eight**

Charneco contends that his trial counsel rendered ineffective assistance by not seeking DNA testing on the blood droplets found at the crime scene.  The state post-conviction court rejected this ground in the Rule 3.850 motion:

> Defendant asserts that counsel was ineffective for not obtaining the test results of the blood droplets found outside of the bar where the victim was stabbed. He asserts that the lead

detective's affidavit stated that "the victim attempted to stab the suspect and the suspect [struck] at the victim to prevent being stabbed." Defendant claims that blood droplets at the location would have proven that he was not involved in the altercation and that it was, in fact, someone else. However, this claim must fail. As testified to by the lead detective, Lisa Schoneman, there was no evidence that anyone other than the victim was bleeding. Thus, there were no allegations that the blood belonged to anyone other than the victim. Moreover, there were never any allegations or any evidence that the assailant, whoever it was, was bleeding. In fact, assuming the Defendant's allegation is true it still does not support his argument. Specifically, Defendant states that the suspect struck back at the victim to prevent . . . being stabbed. Since there is no allegation that the "suspect" was in fact stabbed by anyone or otherwise bleeding, the Defendant fails to establish why this evidence would have been helpful.[2] Defendant next argues that the blood did not belong to the victim and that law enforcement mishandled the blood that would have proven to be the blood of someone other than the victim. This argument is wholly without merit. There is no question that the victim was stabbed and bleeding the night of the incident. There was never a question as to whose blood it was; the only issue in this case was one of identification of the assailant; not the victim. Therefore, even assuming it was not the victim's blood as argued by Defendant, it does not change the fact that the victim was stabbed that evening and identified the Defendant as his assailant. Accordingly, this claim is denied.

> 2 It should be noted that the police report Defendant is referring to . . . does not read "the victim attempted to stab the suspect and the suspect [struck] at the victim to prevent being stabbed" as Defendant asserts. The report reads "[t]he suspect approached the victim with a knife. The victim was attempting to back out of the door when the suspect approached, he attempted to strike the *victim* to prevent being stabbed." (Emphasis added). It would seem the detective made [a] mistake and wrote "victim" instead of "suspect" since it would not make sense for the suspect to strike the victim "to prevent being stabbed" when the report clearly states it was the suspect who had the knife.

(Respondent's Exhibit 15, pp. 7–8) (court's record citations omitted)

Even assuming that counsel performed deficiently by not having DNA testing performed on the blood droplets, Charneco cannot establish prejudice because the test result — whether it showed the victim's blood or the blood of another — would not exonerate him.  Charneco cannot obtain relief on this ground of ineffective assistance of counsel because *Strickland's* requirements remain unsatisfied.  Charneco fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground.  28 U.S.C. § 2254(d)(1), (2).

Accordingly, Charneco's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Charneco and close this action.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Charneco is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Charneco must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Charneco is entitled to neither a certificate of appealability nor an appeal *in forma pauperis.*

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Charneco must obtain permission from the circuit court to appeal *in forma pauperis.*

ORDERED in Tampa, Florida, on March 30, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE